Dunbar v. USA                    CV-96-440-SD   03/13/97

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**

Edward Dunbar

    v.                                    Civil No. 96-440-SD

United States of America


O R D E R


This matter is before the court on a petition to vacate or set aside a federal criminal sentence.  28 U.S.C. § 2255.[1]


1.  Background

In April 1990 Edward Dunbar, Phillip A. Wight, and Michael J. Fields were indicted for drug and firearms offenses.  As here relevant, Count I charged Dunbar and his codefendants with

---

[1]28 U.S.C. § 2255 provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

participation in a conspiracy to distribute together with the distribution of marijuana in violation of 21 U.S.C. § 846. Count II charged Dunbar with possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(2) and 841(b)(1)(D). Count III charged that Dunbar, in relation to a drug trafficking crime, used or carried a certain Starr nine-millimeter pistol in violation of 18 U.S.C. § 924(c)(1).[2]

Dunbar had been approached by an undercover police officer who represented that he was a buyer seeking a large quantity of marijuana. After several attempts, Dunbar was successful in finding that Wight could produce ten pounds of marijuana. Following some preliminary negotiations, a meet was set on March 10, 1990, in a Burger King parking lot in Manchester, New Hampshire.

On the evening before the meet, Dunbar purchased the Starr nine- millimeter pistol. Earlier on the morning of March 10, he delivered to Fields, at the residence occupied by Fields and Wight, a nine-millimeter Interdynamic pistol.[3]

On March 20, Wight and Fields drove to the Burger King parking lot in a van driven by Fields. This van held the

_____

[2]18 U.S.C. § 924(c)(1) imposes a five-year prison term on anyone who, "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm."

[3]Dunbar had purchased the Interdynamic pistol several years before at a party in Manchester.

2

marijuana and the Interdynamic pistol. Dunbar appeared as a passenger in another vehicle. On the floor of the passenger side of this vehicle was the loaded nine-millimeter Starr pistol.

Dunbar got out of the vehicle in which he arrived and entered the vehicle occupied by the undercover police officers. Following discussion, Dunbar spoke to Wright and then returned to the undercover vehicle. An undercover officer then went to the van, where Wight showed the officer the marijuana, and the officer then gave a signal and all parties were arrested. A pat-down search of Dunbar at the scene revealed some sixteen rounds of nine-millimeter ammunition on his person.

Following jury selection, but prior to commencement of trial, Dunbar entered a plea of guilty to all three counts of the indictment returned against him. His codefendants Wight and Fields proceeded through trial. They called Dunbar as a witness in the course of such trial.[4]

Dunbar was sentenced on January 10, 1991, to fifteen months' incarceration on Counts I and II, to run concurrently, and he was also sentenced to the mandatory consecutive sentence of sixty months on Count III.

On December 6, 1995, the Supreme Court decided <u>Bailey v.</u>

---

[4]Fields and Wight were both convicted on drug charges against them, but only Wight was convicted of firearms offenses. His direct appeal was unsuccessful. <u>United States v. Wight</u>, 968 F.2d 1393 (1st Cir. 1992).

3

United States, ___ U.S. ___, 116 S. Ct. 501. This was a consolidation of two cases, each of which concerned a conviction under 18 U.S.C. § 924(c)(1). Bailey had been convicted of possession of a loaded nine-millimeter pistol, which was located in the trunk of the automobile he had been operating when arrested. The second petitioner, Robinson, following execution of a search warrant, was found to have an unloaded, holstered Derringer in a locked trunk in her bedroom closet.

The Bailey court, relying on the dictionary definition of "use", held that a conviction under the "use" prong of the statute could be upheld only if the defendant "actually employed the firearm during and in relation to the predicate crime." Id., 116 S. Ct. at 506-09. The mere presence or storage of the weapon was held to be insufficient. Id. at 508-09.

Invoking Bailey, Dunbar here contends that, as the record does not support his "use" of the nine-millimeter Starr pistol, his sentence under Count III must be vacated.

2. Discussion

There can be little dispute but that the record in this case[5] would not permit Dunbar's sentence to rest on the "use"

---

[5]The court has reviewed the transcript of the trial of Wight and Fields, as well as the legal authorities cited by counsel for the respective parties.

prong of 18 U.S.C. § 924(c)(1). However, it does not follow, as he claims, that his sentence must be vacated.

This is because the Bailey case left open the issue of whether the petitioners therein could be convicted under the "carry" prong of the statute.[6] Indeed, the Court specifically remanded the cases for such a determination.

In the recent case of United States v. Cleveland, et al, ___ F.3d ___ (Feb. 15, 1997), the First Circuit set forth a broad reading of "carrying." In Cleveland, the defendants Gray and Cleveland placed three loaded handguns in a duffle bag in the trunk of their rented vehicle. Their intent was to enter into a drug deal and to rob their suppliers of the drugs. At the location of the meet, Gray exited the rented vehicle and got into the vehicle which contained the drugs. Cleveland, driving the rental vehicle, started to drive off in company with the drug vehicle. At this point, both vehicles were stopped by DEA agents and the occupants were arrested.

Cleveland and Gray entered guilty pleas to drug charges as

---

[6]The court rejects Dunbar's suggestion, contained in footnote 2 of page 3 of his Memorandum of Law, that United States v. Spring, 80 F.3d 1450, 1464 (10th Cir.), cert. denied, 117 S. Ct. 385 (1996), requires an evidentiary hearing before the court can rule on the applicability of the "carry" prong of 18 U.S.C. § 924(c)(1). The Spring case concerned an incomplete jury instruction, which on direct appeal was found to require a remand for new trial on such issue. It has no application to this collateral attack, which follows a guilty plea.

5

well as to the charges of carrying or using a firearm during and in relation to a drug trafficking crime. Bailey was decided shortly after acceptance of their guilty pleas, and when the district court denied their motions for relief from their pleas, they sought relief in the court of appeals.[7]

The Cleveland court held that the placing of the weapons in the trunk of the rented vehicle, to be used in conjunction with the defendants' drug dealings, was sufficient to uphold the convictions under the "carry" prong of the statute, as the weapons did not have to be accessible to the defendants to comply with such requirements of the statute. Cleveland, supra, slip op. at 20-35.

Even more recently, the First Circuit, following the ruling in Cleveland, has reversed a district court which had narrowly defined "carrying." United States v. Objio-Sarraff, ___ F.3d ___ (Mar. 10, 1997). In that case, airport surveillance revealed contact between an aircraft crew member and the defendant in an area near the airport. The two drove in the defendant's automobile to the airport, where the crew member boarded the plane with two packages, departing immediately therefrom with a different bag. The officers approached, seized the bag, which

---

[7]Gray had not been sentenced, and he sought relief by means of a motion for correction of sentence pursuant to Rule 35(c), Fed. R. Crim. P. Cleveland had been sentenced, and his direct appeal was pending when he sought relief under 28 U.S.C. § 2255.

contained drugs, and a consensual search of the automobile revealed a briefcase containing an unloaded revolver, live ammunition, and $6,000 in cash. Defendant admitted ownership of this briefcase, and his subsequent convictions for drug and firearms offenses include a count which charged him with using and carrying a firearm in violation of 18 U.S.C. § 924(c)(1). See Objio-Sarraff v. United States, 927 F. Supp. 30, 31-32 (D.P.R. 1996).

From what has been hereinabove written, it is clear that one does not have to be present in a vehicle which contains the firearm to have upheld a conviction for "carrying" a firearm in violation of 18 U.S.C. § 924(c)(1). It is equally clear that, considering the record in this case, Dunbar's challenge to his sentence under that statute must fail.


3. Conclusion

For the reasons hereinabove outlined, the court finds and rules that Edward Dunbar is not entitled to the relief sought in his motion to vacate or set aside the sentence imposed upon him

on Count III of the indictment.  His motion must be and it is accordingly herewith denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

March 13, 1997

cc:  Gary S. Lenehan, Esq.
     United States Attorney
     United States Marshal
     United States Probation